Pages 1 - 53

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VAUGHN R. WALKER

IN RE NATIONAL SECURITY AGENCY       )MDL 06-1791 VRW
TELECOMMUNICATIONS RECORDS            )Related Case C 07-0109 VRW
LITIGATION                           )Related Case C 0672 VRW
                                     )Friday
_____)September 12, 2008

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiffs:**          EISENBERG & HANCOCK
                             1970 Broadway
                             Suite 1200
                             Oakland, California 94612
                        BY:  **JON B. EISENBERG, ESQ.**


                             ELECTRONIC FRONTIER FOUNDATION
                             454 Shotwell Street
                             San Francisco, CA 94110
                        BY:  **CINDY COHN, ESQ.**
                             **KURT OPSAHL, ESQ.**


                             MOTLEY RICE, LLP
                             28 Bridgeside Boulevard
                             PO Box 1792
                             Mr. Pleasant, South Carolina 29464
                        BY:  **VINCENT PARRETT, ESQ**


              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Reported By:    *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                *Official Reporter - US District Court*
                *Computerized Transcription By Eclipse*

1   **APPEARANCES:   (CONTINUED)**

2

3   **For Plaintiffs:**          AMERICAN CIVIL LIBERTIES UNION
                                  Foundation of Northern California, Inc.
                                  39 Drumm Street
4                                 San Francisco, California 94111
                              BY:  **ANN BRICK, ESQ.**
5

6

7                                 STATE OF MISSOURI
                                  Public Service Commission
                                  200 Madison Street
8                                 PO Box 360
                                  Jefferson City, Missouri 65102
9                             BY:  **PEGGY ANN WHIPPLE, ESQ.**

10

11                                LIEFF, CABRASER, HEIMANN
                                    & BERNSTEIN
12                                275 Battery Street, 30th Floor
                                  San Francisco, California  94111
13                            BY:  **BARRY R. HIMMELSTEIN, ESQ.**

14

15

16  **For Intervenor:**           THE FIRST AMENDMENT PROJECT
                                  1736 Franklin Street
                                  9th Floor
17                                Oakland, California 94612
                              BY:  **JAMES R. WHEATON, ESQ.**
18

19

20  **For Defendants:**           UNITED STATES DEPARTMENT OF JUSTICE
                                  Civil Division
                                  20 Massachusetts Avenue, NW
21                                Room 6102
                                  Washington, DC 20530
22                            BY:  **ANTHONY J. COPPOLINO, ESQ.**

23

24          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

25

1   **APPEARANCES:   (CONTINUED)**

2

3   **For Defendants:**            PILLSBURY WINTHROP LLP
                                 50 Fremont Street
4                                Post Office Box 7880
                                 San Francisco, California  94120-7880
5                     BY:  **BRUCE A. ERICSON, ESQ.**

6

7
                                 SIDLEY AUSTIN, LLP
8                                1501 K Street, NW
                                 Washington, DC 20005
9                     BY:  **BRADFORD A. BERENSON, ESQ.**

10

11                               MUNGER, TOLLES & OLSON, LLP
                                 355 S. Grand Avenue
12                               35th Floor
                                 Los Angeles, California 90071
13                    BY:  **HENRY WEISSMANN, ESQ.**

14

15                               WILMER, CUTLER, PICKERING, HALE & DORR
                                 1875 Pennsylvania Avenue, NW
16                               Washington, DC 20006
                      BY:  **SAMIR JAIN, ESQ.**
17

18
                                 WILLIAMS & CONNOLLY
19                               725 12th Street, NW
                                 Washington, DC 20005
20                    BY:  **JOHN G. KESTER, ESQ.**

21

22

23                        _   _   _   _

24

25

# P R O C E E D I N G S

**SEPTEMBER 12, 2008**                                              **11:12 a.m.**

 

     **THE CLERK:**  Calling MDL 06-1791, In Re NSA Telecommunications Records Litigation, and this relates to Civil 07-109, Al Haramain versus George Bush.

     **THE COURT:**  Never heard so many silent lawyers in my life.  You want to enter an appearance?

     **MR. EISENBERG:**  Jon Eisenberg for Al Haramain, Belew and Ghafoor.

     **THE COURT:**  All right.  That's how you do it.

     **MR. COPPOLINO:**  Your Honor, Anthony Coppolino, Department of Justice, for the United States.

     **THE COURT:**  Welcome back.

     **MR. EISENBERG:**  Thank you, your Honor.

     **THE COURT:**  We are here basically to set a schedule in Al Haramain and in the other cases.

     Let me tell you what I have in mind.  I think it would expedite matters in this case to have both the motions which the parties contemplate from Al Haramain, to have the government file its motion to dismiss or its summary judgment motion, however it wishes to characterize that motion, on or before September 30.

     The plaintiffs to file its motion for discovery under Section 1806(f) on the same date, September 30.

```
 1                Then the parties to file their respective opposition
 2    to the other party's motions on October 23.
 3                Reply memoranda on November 13.
 4                And we will set the matter down for hearing on
 5    December 2nd.  We can do that either in the morning or
 6    afternoon depending upon what your preference is.
 7                How does that schedule sound?  Mr. Eisenberg?
 8                MR. EISENBERG:  That's fine with us, your Honor.
 9                THE COURT:  Mr. Coppolino?
10                MR. COPPOLINO:  You say December the 2nd, your Honor?
11                THE COURT:  Yes.
12                MR. COPPOLINO:  That's a Tuesday, not your normal --
13                THE COURT:  For you, Mr. Coppolino and Mr. Eisenberg,
14    a special setting.
15                MR. EISENBERG:  I thank you for that, your Honor.
16                THE COURT:  What's that?
17                MR. EISENBERG:  I thank you for that, your Honor.
18                MR. COPPOLINO:  And morning would be preferable, if
19    it please the Court, your Honor.
20                THE COURT:  Why don't we do it at 10:00 o'clock?
21                MR. COPPOLINO:  I guess, your Honor, I would just
22    ask the -- obviously, we had set forth our views as to why
23    their motion shouldn't be filed at this point, and I don't want
24    to spend time on that since you appear to have decided --
25                THE COURT:  Well, I have read the statements and I
```

1  understand your position, but I think in this case, that is the

2  Al Haramain case, I think you both can present your respective

3  positions and your oppositions.

4          And, obviously, if you persuade me on the motion to

5  dismiss or summary judgment, we may never reach the 1806

6  issues.  That may be a complete disposition of the matter,

7  but --

8          **MR. COPPOLINO:**  If I could just clarify one thing.

9          **THE COURT:**  In the event that motion is denied, I

10  want to hear your position and what plaintiff's position is

11  with respect to it.

12          **MR. COPPOLINO:**  Is your Honor expecting that in our

13  -- we could certainly set fourth our views in opposition to

14  their views.  That's not a problem.

15          But I would not contemplate actually commencing the

16  1806(f) proceedings in response to their motion, since in our

17  view that requires resolution of a number of threshold issues

18  and would require an Attorney General certification or

19  affidavit to trigger 1806(f).  If that's off the table, then we

20  would just be presenting our issues and arguments.

21          **THE COURT:**  You will have to respond to Mr.

22  Eisenberg's memorandum as it's -- and position as its filed.

23          **MR. COPPOLINO:**  Thank you, your Honor.

24          **THE COURT:**  All right?

25          In terms of page limits, 30 pages on the opening

1  briefs, 30 pages on the oppositions, 15 pages on the reply.

2  If we want more pages, I know that you are a position to

3  furnish them.

4       **MR. EISENBERG:**  Your Honor, for our 1806 motion, the

5  page limits are more than adequate.  I anticipate needing about

6  22 to 25 pages.

7       **THE COURT:**  Oh, that's fine.

8       **MR. EISENBERG:**  I will give you less than you are

9  allowing us, if you wish.

10      I would like to just briefly raise the issue of

11 classified filings by the government.  We have seen a lot of

12 them in the past and I think we would benefit from some

13 guidance by some -- benefit from guidance by the Court as to

14 whether or not they would be appropriate now, because if there

15 are classified filings in Mr. Coppolino's motion, we would like

16 somehow the opportunity to respond to them in a secure manner.

17      Now, I don't know if Mr. Coppolino has in mind

18 further classified filings, so perhaps I need to turn -- turn

19 it over to him.

20      **MR. COPPOLINO:**  Well, I suppose, your Honor, my short

21 answer would be, they can see what we file and respond to it in

22 opposition to our motion, because I'm not prepared to in any

23 way concede that we would not present the evidence we need, we

24 think that the Court needs to see, including ex parte in

25 camera, in order to decide the questions before it.

1           And, certainly, for example, if an Attorney General

2    authored certification is warranted, that, undoubtedly, would

3    be classified ex parte in camera; but in addition to that, the

4    purpose of their motion -- the purpose of the first question to

5    be decided, to decide whether they are aggrieved, to decide

6    whether that is established.

7           If we have facts and information which is classified

8    that can only be presented ex parte in camera, in order to

9    demonstrate to you the actual facts may differ or for other

10   reasons than what they aver in their complaint and we do that

11   on summary judgment, I think we would have the right to do

12   that.  Otherwise, you would be asked to adjudicate a question

13   as to whether standing is established without access to the

14   facts.

15          We have to recognize, as I think the Court does, that

16   this is a proceeding that involves allegations of classified

17   foreign intelligence surveillance activities and this is not

18   about -- the objective of establishing standing is whether, in

19   fact, they have standing.

20          And if they are going to aver something on the public

21   record, as they have on their complaint, that they contend

22   proves by inference that they have standing and the actual

23   facts are clearly to the contrary, but remain classified, I

24   think we would have the right and opportunity to present those.

25          Now, whether you consider -- I don't think that

1   forecloses you from considering any argument they would make as

2   a matter of law as to whether you ought to consider that.  We

3   certainly would object at any point to their having access to

4   that information.

5        **THE COURT:**  Well, let me tell you what has been my

6   reaction to the filings in these cases here before.  And that

7   has been that the classified materials that I have viewed in

8   connection with the state secrets issues that have been

9   litigated here, frankly, have not been very helpful in

10  resolving the issues that I have had to resolve.

11       And, consequently, I have come to the conclusion that

12  what I should do, if at all possible, is to address the issues

13  that are raised without resort to any classified information,

14  if I can.

15       So I think it behooves you, Mr. Coppolino, to be

16  sparing in your submission of such materials.  Obviously,

17  sparing because of the sensitivity of those materials, but,

18  also, because it may very well be that resort to that

19  information is simply not necessary in order for you to present

20  your position.  And you might very well -- and I'm not telling

21  you how to litigate your position, but you might very well take

22  the position that you don't think it's necessary to file

23  anything that's classified for purposes of the motions that we

24  are going to hear, but you reserve the right to do so at some

25  later time if the case proceeds.

1          So I don't want to stop you and I'm not going to

2    direct that you cannot file those kinds of materials, but bear

3    in mind I haven't been very helped by them in the past.

4          **MR. COPPOLINO:**  Thank you, your Honor.

5          **THE COURT:**  Okay.

6          **MR. EISENBERG:**  If I can only add, your Honor, we

7    believe the issue here is whether or not we made a sufficient

8    showing based on unclassified information.

9          **THE COURT:**  That does seem to be the issue.

10         **MR. EISENBERG:**  That is the issue, and I don't see

11   how classified information could possibly have anything to do

12   with that determination.

13         So with that, I will thank you.

14         **THE COURT:**  Very well.

15         Now, can we turn to the telecommunications cases.

16         **MS. COHN:**  Good morning, your Honor.  Cindy Cohn on

17   behalf of the MDL plaintiffs in the Hepting case.

18         **THE COURT:**  Good morning, Miss Cohn.

19         **MR. PARRETT:**  Good morning, your Honor.  Vince

20   Parrett of Motley Rice for the Verizon customer plaintiffs.

21         **THE COURT:**  Good morning.

22         **MR. OPSAHL:**  Good morning.  Kurt Opsahl, Electronic

23   Frontier Foundation, for the MDL plaintiffs.

24         **MS. BRICK:**  Good morning, your Honor.  Ann Brick,

25   ACLU of Northern California on behalf of plaintiff.

1       **MS. WHIPPLE:**  Good morning, your Honor.  Peggy

2   Whipple on behalf of only one of the two Missouri cases pending

3   before you, Clayton versus AT&T Communications, in which I am

4   plaintiff's counsel.

5       **THE COURT:**  Very well.

6       **MR. HIMMELSTEIN:**  Good morning, your Honor.  Barry

7   Himmelstein from Lief, Cabraser, Heimann and Bernstein for the

8   MCI class plaintiffs.

9       **MR. WHEATON:**  Your Honor, James Wheaton for First

10  Amendment Project on behalf of the potential intervenor Media

11  Alliance.  I was asked this morning to appear and to discuss

12  procedures for that intervention.

13       **THE COURT:**  Very well, Mr. Wheaton, good morning.

14       **MR. WHEATON:**  Thank you.

15       **THE COURT:**  Just a moment please.

16       (Brief pause.)

17       **THE COURT:**  All right.

18       **MR. COPPOLINO:**  Your Honor, Anthony Coppolino, again

19  for the United States.

20       **MR. ERICSON:**  Bruce Ericson for the AT&T defendants.

21       **MR. BERENSON:**  Brad Berenson, Sidley Austin LLP, for

22  the AT&T Cingular and Bell South defendants, your Honor.

23       **MR. WEISSMANN:**  Good morning, your Honor.  Henry

24  Weissmann of the Munger Tolls firm for the Verizon defendants.

25       **MR. JAIN:**  Samir Jain at Wilmer Hale also for the

1   Verizon and MCI defendants.

2          **MR. KESTER:**  Good morning, your Honor.  John Kester,

3   Williams and Connolly, for Sprint Nextel.  And I would like to

4   introduce my partner, Gilbert Greenman, also representing

5   Sprint Nextel.

6          **THE COURT:**  Very well.  Anybody else?

7          **MS. COHN:**  Your Honor, if I may.  I wanted to let you

8   know right away that we have in preparing for the immunity

9   issues to come up really come to the conclusion -- this is not

10  reflected in the CMC statement, which is why I raise it now,

11  that it would be useful and I think proprietary to combine the

12  cases against AT&T into a consolidated complaint for those

13  purposes.

14         Otherwise, I worry that we are going to end up with

15  some tag-along issues or some -- you know, the cases raise a

16  variety of claims in a variety of different ways.  And I think

17  if we pull them all together into one complaint, the fight

18  about the immunity and its effect on the cases will be a lot

19  cleaner and easier for everyone.

20         I have a proposed schedule that adjusts things a

21  little bit in order to give us the time to do that.  There are

22  23 cases against the AT&T defendants that would need to be

23  combined.  Then it may make sense to also take Cingular and

24  Bell South in at that time, although I haven't finished my

25  thinking on that now that they are all owned by AT&T, but I

1  thought I would present a slightly revised schedule to reflect

2  that.

3         (Whereupon, document was tendered

4          to the Court.)

5         **MS. COHN:**  I'm sorry to interrupt, and I know that

6  you probably have some thoughts, but since this is different

7  than what was in the case management statement, I wanted to

8  bring it to your attention right away.

9         **MR. BERENSON:**  Your Honor, Brad Berenson for the AT&T

10 defendants.

11        We believe that the preparation and filing of a

12 consolidated complaint against AT&T is entirely unnecessary in

13 order for the Court to evaluate the immunity issues and will

14 just be a source of needless extra delay in a schedule that

15 everyone seems to agree should move forward expeditiously.

16        There are 23 complaints against the AT&T defendants.

17 As I understand it, the government is ready to file

18 certification and a motion with respect to those 23 complaints.

19 And all of the normal purposes that would be served by having a

20 consolidated complaint are utterly beside the point here, where

21 we are ready, willing and able to deal with the 23 complaints

22 individually.

23        So I would ask that leave not be granted to --

24        **THE COURT:**  Let me ask you, Mr. Berenson, what role

25 do you think you and your colleagues representing the other

1  telecommunications carriers have in this?  Isn't this really a

2  motion to be brought by the government and only by the

3  government?

4          **MR. BERENSON:**  It absolutely is, your Honor.  We do

5  not contemplate filing any motion of our own.  The Attorney

6  General will file a certification, if appropriate, presumably

7  accompanied by some motion to dismiss.

8          And our role will be that specified for the parties

9  in the FISA Amendments Act itself, which is to brief whatever

10 legal issues arise out of that filing in order to be of some

11 assistance to the Court.  That's really it.

12         **THE COURT:**  I see.  More briefs.

13         **MR. BERENSON:**  That's what Congress has asked for,

14 your Honor.

15         **THE COURT:**  Okay.  All right.

16         Mr. Coppolino?

17         **MR. COPPOLINO:**  The only point I would make on this

18 issue of the amended complaint, your Honor, without getting

19 into the larger issues that we have to address today is that as

20 Mr. Berenson pointed out, the Attorney General certification is

21 going to cover all of the actions that have been brought

22 against electronic communication service providers, including

23 the individual actions, including all the AT&T actions that

24 would be consolidated.

25         And so there is no need to do that in order to make

1    the certification and -- nor, in our view, should we have to

2    wait to do that to -- should we have to wait for another

3    consolidated complaint reiterating the same allegations of

4    assistance that are going to be at issue in the Attorney

5    General's certification in order to make that -- in order to

6    make that certification.

7              So I think the request is unnecessary because the

8    cases are already before the Court and they are cases as to

9    which the certification will be directed, and we certainly

10   would oppose it to the extent that it results in any delay.

11             But we can talk about the larger issues in dispute

12   between the parties as to how we proceed on that score when it

13   pleases the Court.

14             **THE COURT:**  Well, it pleases the Court right now.

15             **MR. COPPOLINO:**  Well, I think, your Honor, if you --

16   I know you have had an opportunity to study our case management

17   proceedings and the fundamental issue I think that's in dispute

18   is whether the government gets to file the motion that you just

19   mentioned to Mr. Berenson; that we have, in our view, the right

20   to file under the new FIZA Act amendments of 2008, along with

21   the Attorney General certifications.  And it is -- it is one in

22   the same.

23             And our view -- when this statute was enacted or was

24   getting near enactment, I called Ms. Cohn -- or, actually, her

25   colleague Mr. Tien, who is on leave, I guess.  I said, Congress

1   is about to pass this.  We are obviously going to seek to

2   implement it at some point.  Let's talk about a schedule.

3          And at that point the plaintiffs came back and said,

4   We don't want you to file your motion.  We oppose your filing

5   your motion.  And we are going to interpose a whole bunch of

6   objections to the act before you do so.

7          And I responded in different ways, but I think the

8   thrust of my response was, You can make any arguments you want

9   in opposition to our motion.  Arguing, for example, that the

10  statute is unconstitutional.  We have seen a lot in the

11  blogosphere about that.  Arguing that there are questions of

12  law to be considered, as the Court considers our motion.

13         But we will, of course, file our motion and you can

14  then respond to it as the normal course is, as I think you just

15  indicated, was the course we would follow in Al Haramain.

16         All of plaintiffs' arguments that they foreshadowed

17  in the case management statement, all of them are classic

18  opposition arguments, or cross motion arguments, but there is

19  nothing --

20         **THE COURT:**  You could hardly blame the plaintiffs for

21  that, Mr. Coppolino.

22         **MR. COPPOLINO:**  Excuse me, your Honor?

23         **THE COURT:**  You could hardly blame the plaintiffs for

24  that.

25         **MR. COPPOLINO:**  No, but the point is, they are

1  opposition arguments.  Nothing would require you to bar us from

2  filing our motion to begin with.

3       And I would add further that I don't believe they can

4  challenge any action that's taken until it is taken.  There is

5  a fundamental right --

6       **THE COURT:**  Perhaps I should hear from Miss Cohn on

7  this point.

8       After all, it does seem to me that on behalf of the

9  government, you are entitled under the FISA amendments to

10  proceed with the motion that you are contemplating.  And it's

11  really Miss Cohn who has the uphill climb here and I should

12  give her the floor to tell me why what she is proposing, that I

13  must say does not appear to be in sync with the FISA

14  amendments, is the appropriate way to proceed.

15       **MS. COHN:**  Sure, your Honor.

16       I think that, you know, the Court retains the plenary

17  authority to decide how cases should proceed and which motions

18  should come when.

19       I have certainly been in many meetings with a Court

20  where a judge has said, You know, it's too early for your

21  summary judgment motion, counsel.  Go off and do some discovery

22  and come back, or you can do this motion now.

23       So I think under the rubric of your ability to kind

24  of control the reasonable process of this case as it goes

25  forward, you have the authority to decide which motions come

1  first, including the government's motion.  I don't think there

2  is anything in the Congressional action that requires you to

3  set aside your ability to control the ordinarily -- ordinary

4  process of the case in front of its Court.

5          **THE COURT:**  Well, that's certainly true.  This

6  statute, however, is an unusual statute.

7          **MS. COHN:**  Absolutely.

8          **THE COURT:**  It appears to contemplate a procedure

9  more or less along the lines of that which the government has

10  outlined in its portion of the case management conference.

11         **MS. COHN:**  Well, your Honor, I think that -- that

12  there are real important reasons why you should let the parties

13  take a stab at presenting the constitutional and, almost as

14  importantly, the statutory interpretation questions first.

15             First of all, I think it's a matter of -- simply as a

16  matter of judicial economy, if this statute is unconstitutional

17  as a threshold matter, which is what we believe it is, then we

18  don't need to reach a lot of complicated questions about how

19  actually to apply it.

20         **THE COURT:**  Well, the problem I had with your

21  position is you don't ordinarily challenge the

22  constitutionality of a statute until you know that the statute

23  applies, and you might in your opposition be able to persuade

24  me that the statute does not apply to one or some other aspect

25  of this case, in which case we wouldn't have to reach the

1  constitutionality issue.

2           **MS. COHN:**  That's right, your Honor, but I think that

3  -- I don't think there is any question that the government is

4  going to apply the statute.  Mr. Coppolino has said as much

5  here and he said it in papers and he said it in correspondence

6  with me.

7           So if there was a question about whether the

8  government was going to exercise its discretion to invoke the

9  statute, then there may be something, but I don't think that

10  there is any --

11          **THE COURT:**  Well, there is a substantial evidence

12  standard which the government has to meet --

13          **MS. COHN:**  That's right.

14          **THE COURT:**  -- under this statute.

15          You may be able to persuade me that that government

16  has not met that substantial evidence threshold, in which case

17  we wouldn't have to reach the constitutionality issue.

18          **MS. COHN:**  And that runs smack into the first, I

19  think, two real issues of statutory interpretation that we need

20  to sort out before we get into the matter of applying the

21  statute.

22          They have a substantial evidence standard that they

23  have to meet.  That's a burden of proof, an evidentiary burden

24  of proof.

25          So I think that under the basic rules, this is

1    essentially -- this is a summary judgment motion that they are

2    going to be bringing.  It doesn't qualify as a motion to

3    dismiss.

4          The statute itself says the government is either

5    going to bring a motion to dismiss or a motion for summary

6    judgment, but I think under the settled rules this is an

7    evidentiary motion.  It's a motion for summary judgment.

8          Well, ordinarily in the context of a motion for

9    summary judgment the parties get to present evidence on both

10   sides, and we get to present our evidence.  The question about

11   the Klein evidence and the Marcus evidence that's already in

12   the record in this case about the nature of the surveillance

13   that we allege is going on in the AT&T facility on Folsom

14   Street, the raft of Congressional admissions about the

15   surveillance that has been going on now for seven years.

16         The, actually, governmental admissions, many of which

17   have happened in the last couple of years that we brought in

18   front of the Ninth Circuit and can bring again in here.

19         Those are all pieces of evidence that we would like

20   to put forward that we already have to demonstrate that they

21   haven't met their burden of substantial evidence to show that

22   this was designed to stop a terrorist attacking of the United

23   States, which is their burden.  That dragnet surveillance of

24   millions of ordinary Americans is not designed to prevent

25   terrorist attacks against the United States.  So we want to put

1   in the evidence that we already have.

2           As far as I can tell from the papers, although the

3   government has been a little cagey about this, they do not

4   believe that you are entitled to look at this evidence and --

5   and so we are going to have a fight about that.

6           Secondarily, in the context of a motion for summary

7   judgment situation or leading into one, the parties ordinarily

8   get a chance to do discovery so that we can develop additional

9   evidence in support of what we -- in addition to what we

10  already have and put that in front of the Court to say they

11  have not met their burden of substantial evidence.

12          But the government is envisioning a situation that

13  turns that on its head; that they get to move to get rid of our

14  case before we get the opportunity to try to develop and

15  present evidence about why it is they haven't met their burden.

16          **THE COURT:**  How can I read this statute and come to a

17  conclusion that if the government is able to meet the

18  requirements of the statute, that Congress intended for this

19  statute to bar all of the cases against the telecommunications

20  carriers.  And in light of that kind of statutory provision how

21  can I faithfully, with the provisions of the statute, do

22  anything other than to address that issue first?

23          **MS. COHN:**  Well, your Honor, I think that the statute

24  doesn't say that without any evidence or any input from the

25  plaintiffs you have to decide whether -- they would have to --

1          **THE COURT:**  We are not contemplating an ex parte

2   proceeding.

3          **MS. COHN:**  Well, I believe actually that the

4   government effectively is in terms of evidence, and this is the

5   fight.  I mean, this is what I want to sort out.

6          We think that they are -- we should be allowed -- and

7   there is nothing about this statute that prevents us, as far as

8   we can tell, from presenting the evidence we already have or

9   from gathering additional evidence using the ordinary Federal

10  Rules of Civil Procedure Section 26.

11         If Congress had wanted to prevent us from having any

12  ability to gather additional information in order to

13  demonstrate that the government hasn't met its evidentiary

14  burden, they know how to turn off discovery.

15         The Private Securities Litigation Reform Act of 1995,

16  for instance, has limitations on discovery where Congress has

17  clearly laid that out.  There is nothing like that in the FISA

18  Amendments Act.

19         So unless Congress prevents us from having the

20  ability and the normal tools in a normal to gather evidence in

21  support of our position, we get those rights.

22         There is nothing in the statute that says Federal

23  Rule of Civil Procedure Section 26 doesn't apply or in any way

24  limits our ability to conduct this like we'd conduct a normal

25  case.

1          We have a burden here that's an evidentiary burden

2    and I think it's --

3          **THE COURT:**  This is a brand new statute.

4          **MS. COHN:**  It is.

5          **THE COURT:**  Brand new.  Hot off the government

6    printing office press.

7          **MS. COHN:**  I wouldn't argue.  That is true.

8          **THE COURT:**  And there are clearly legal issues

9    associated with that statute, and the full implications of it

10   have certainly not been tested.

11         And under those circumstances why isn't the sensible

12   course of action to tee up what appear to be the dispositive

13   provisions of that statute and see whether or not they apply to

14   this case.

15         **MS. COHN:**  Well, your Honor, I think that it would be

16   pretty unfair to tie both our hands behind our back and make us

17   go through that process, by not being able to present evidence

18   and not being able to develop additional evidence and then see

19   if we can fight their substantial evidence presentation.

20         **THE COURT:**  The provisions of the statute don't

21   contemplate an evidentiary hearing at this threshold stage.

22         **MS. COHN:**  Well, I think that they do, your Honor.

23   How else are we going to know whether they've made substantial

24   evidence?  They have got an evidentiary burden.

25         Presumably, I think it's not crazy to think that our

1  burden is to present evidence to you showing that they haven't

2  made their burden, and so --

3          **THE COURT:**  But there is nothing that prevents you

4  from trying to make that showing.

5          **MS. COHN:**  Well, if we don't get discovery, then I'm

6  stuck with just what I have so far, which I'm not saying is

7  insubstantial, but I don't think it's fair to prevent us from

8  trying to gather more.

9          Basically to have to oppose their substantial

10  evidence presentation without the opportunity to develop the

11  evidence we need to counter it seems to be pretty unfair.

12          There is another reason as well why I don't think we

13  should run head-long into this, and that is -- those are some

14  of the issues that you referenced earlier, which is the secrecy

15  issues and the due process concerns with the secret evidence.

16          This certification process and motion process is set

17  up in a way where the Attorney General can trigger absolute

18  secrecy if they want to.  You have -- takes away any discretion

19  that you have about the secrecy.  It also actually requires you

20  to issue a secret order, a largely secret order without -- you

21  know, it's one thing for the Court to have discretion to decide

22  to keep things secret.  That's not what this statute does.

23          This statute gives to the Attorney General the right

24  to demand that you have keep things secret, which, again, I

25  think is a part of why we think the statute is

1    unconstitutional.

2          And we'd certainly like the opportunity to present to

3    you why we think that part of the statute at a minimum should

4    not be enforced and that you should be empowered to decide

5    whether there are pieces of what the government has told you

6    under this provision that have no real basis for being kept

7    secret from the plaintiffs.

8          **THE COURT:**  What I don't understand is why you can't

9    make all of these arguments in opposition to the motion?

10          **MS. COHN:**  Well, I can, your Honor, but we are going

11   to end up in a situation with an extremely complicated brief

12   that I think will be hard for us and, certainly, I think will

13   be hard for the Court.  Because I'm going to have to say, Well,

14   your Honor, if you get to consider the Klein and Marcus

15   evidence -- here is all the reasons you should consider the

16   Klein and Marcus evidence and if you decide that you agree with

17   me that you can consider the Klein and Marcus evidence, here is

18   my arguments against it.

19          Now, if you decide that you can't consider -- the

20   government is going to take the position, I suspect, that you

21   don't get to consider any evidence outside of what they give

22   you.  So then I'm going to have to also back up and say, Well,

23   actually, if you don't get to consider Klein and Marcus, here

24   is all the reasons why we think that's a problem.  And, by the

25   way, that's another reason why the whole thing is

1   unconstitutional because it sets up a system that really

2   deprives us of due process here.

3           I'm going to have to do the same thing about every

4   piece of evidence and then I'm going to have to write you a

5   section about all the other discovery that I would do if I had

6   the opportunity to do so and what I think that might do.  And

7   you are going to have, you know, a kind of big if-then brief,

8   which is going to be a lot longer than if the parties all know

9   what the rules are before we brief this.

10          If I know I don't have to brief whether you get to

11  look at Klein and Marcus and you don't have to sort that out,

12  you can decide that first and then you will get clean briefs on

13  just the issues that we -- you know, you had determined are

14  relevant to the discussion.

15          I think that's the right way to go.  It has this

16  extra benefit that I think is tremendously important, which is

17  that the Court doesn't have to look at the classified -- at the

18  secret filings under our ruling until after it's decided that

19  the statute actually is constitutional and should apply.

20          I think your Honor has been careful throughout this

21  litigation to try to limit the amount of secret evidence that

22  is presented and in this instance a secret ruling that is going

23  to be issued.

24          If you go the way that we are doing it, we can have a

25  bunch of threshold issues that can be completely on the record.

1   There is no secret evidence needed for our arguments and I

2   suspect not many for -- not for the government's responses

3   either because it's about the legality of the statute,

4   separation of powers questions and due process questions.

5            And we can have this part of the fight in the open,

6   as opposed to having to have a situation where there are a lot

7   of classified information -- not classified, but information

8   that the Attorney General has ordered to be kept secret from;

9   the parties, that the Court has to weed through and base its

10  decision on.

11           So I think that the due process problems are

12  worrisome here and that the course that we have charted is one

13  that would really leave the secrecy questions for the second

14  round and once we all have clarity on what the statute means

15  and whether it survives constitutional muster.

16           **THE COURT:**  You think one round of motions like that

17  is going to provide clarity?

18           **MS. COHN:**  Well, your Honor, I think you have been

19  pretty good at giving us really clear rules.  Sometimes I agree

20  with them, sometimes I don't.  But I think that it will really

21  help focus the questions.

22           This is a new statute.  It has a lot of -- there is

23  room for multiple interpretations of many pieces of it.

24           We have stated our position, our statutory

25  interpretations in the CMC statement.  The government has

1    pretty clearly not, and so we don't know exactly which parts

2    they disagree with.  But I think it's fair to say they disagree

3    with us on discovery and I think it's fair to say that they

4    disagree with us on their ability to look at the entire record

5    in the case, including the evidence that the plaintiffs have

6    presented.

7          And I would just as soon get those questions sorted

8    out so that I can then brief you on the actual application of

9    the statute based on a clear understanding of what the statute

10   let's you do and look at.

11         This isn't a situation where there are kind of small

12   questions of statutory interpretation.  These are very big

13   questions.  You know, do the plaintiffs -- are the plaintiffs

14   denied their Federal Rule of Civil Procedure rights?

15         **THE COURT:**  That's true, and it's important to bear

16   in mind that this is not the last stop on the railroad.

17         **MS. COHN:**  It's true, but then we will end up going

18   up on appeal on questions about whether the Court looked at

19   everything it ought to look at, as opposed to whether the

20   actual decision of the Court was right or not, which I think

21   will result in much greater delay.  I would just as soon go up

22   into the Ninth Circuit, where I suspect Mr. Coppolino will take

23   us if you rule in my favor, and I will probably go if you

24   don't, with an actual ruling about the statute itself as

25   opposed to side fights about what's appropriate for the Court

1  to look at and whether our due process rights were violated as

2  an application of this process, rather than the actual merits

3  of the decision.

4          So I think it behooves everybody to get some clarity

5  on the threshold issues before we go into the actual

6  application of the statute.

7          **THE COURT:**  All right.  Thank you, Miss Cohn.

8          As persuasive as Miss Cohn has been this morning, and

9  as she usually is, I am, however, not persuaded by her argument

10 that we ought to proceed to address the constitutionality of

11 the statute first.  That does seem to me to put the cart before

12 the horse, as I read this statute.

13         Although, certainly, I cannot say that I have great

14 familiarity with the statute and, indeed, it's a new statute

15 and an unusual one providing for an unusual procedure.

16         .  If the law were more highly developed in this

17 area.

18         And we knew exactly what this statute contains and

19 how it's applied and how it works and how it's intended to work

20 and so forth, why, I think the plaintiff's arguments about

21 scheduling would make a great deal more sense.

22         But I do think we need first to see if the statute

23 applies to these cases, to let the government make its

24 presentation in that regard, and to decide that issue as fully

25 as possible, and then decide how the cases are to proceed, if

1  at all, thereafter.

2          So what I would contemplate is a motion by the

3  government and, unless Mr. Coppolino persuades me otherwise or

4  Miss Cohn, I would contemplate essentially the same timing that

5  we have in the Al Haramain case, aiming toward a hearing in

6  early December and I would also contemplate some real

7  limitation on the briefs.

8          Mr. Berenson mentioned the fact that the

9  telecommunications providers want to weigh in with a lot of

10  briefs.  It's foolish for a judge to refuse to accept learning

11  from whatever source it comes, but there is a limit on what the

12  Court can or is willing to read.  And you can bear in mind that

13  I can always ask for more briefing if there is an issue that I

14  particularly want to hear about.  It's been known to happen.

15          So what I'd really contemplate and appreciate is a

16  motion by the government, in the order of 30 pages, filed on

17  September 30, with opposition by the plaintiffs in October,

18  perhaps the same schedule as in Al Haramain, October 23 -- if

19  the plaintiffs want some more time, that would be fine -- with

20  any reply memorandum by the government on the 13th of November,

21  and a hearing also on December 2nd.

22          And, Mr. Berenson, can I persuade you to hold your

23  fire and not file any briefing?

24          **MR. BERENSON:**  Your Honor, may we have a minute or

25  two to consult?

1           THE COURT:  Sure.

2           (Discussion held off the record.)

3           MS. COHN:  We can wait or I definitely have some --

4           THE COURT:  You have some problem with that schedule?

5           MS. COHN:  I do, your Honor.

6           THE COURT:  Okay.  Well, let's hold off and see what

7   the caucus on the other side of the courtroom produces.

8           MS. COHN:  Can I ask a clarifying question?  Or, I

9   guess, we should just wait?

10          THE COURT:  Why don't we wait?

11          (Brief pause.)

12          MR. BERENSON:  Your Honor?

13          THE COURT:  Yes, Mr. Berenson.

14          MR. BERENSON:  Your Honor, I think the defendants are

15  probably fine with the schedule that you've laid out, but we do

16  need a bit of clarification on one point.

17          Are you asking the telecom carriers to refrain from

18  filing a brief of their own --

19          THE COURT:  Yes, yes.

20          MR. BERENSON:  -- on whatever --

21          THE COURT:  Yes.

22          MR. BERENSON:  That I think we might have a problem

23  with, your Honor.

24          Under Section 1802(d) of the statute, Congress

25  specifically provides a role for the parties.  It puts the

1  defendants, the private defendants, on the same footing as the

2  plaintiffs and says each are entitled to submit their views to

3  the Court on any legal issues that arise.

4         We would not need to file anything, I suspect, if the

5  plaintiffs' group were not challenging the constitutionality of

6  the statute, but to the extent they come before the Court and

7  tell you that this statutory mechanism which was two years in

8  the making by Congress is defective and cannot be applied, I

9  think the carriers will have some views on that that may not be

10  identical to the government's, but, in any event, would

11  hopefully supplement and flesh them out and we would like an

12  opportunity to make a submission.

13         **THE COURT:**  Well, under those circumstances, isn't

14  the appropriate course to wait to see what the opposition is

15  that's filed by the plaintiffs?  And if the plaintiffs raise

16  issues that are of concern to the telecommunications carriers,

17  then they can file a memorandum and, obviously, the plaintiffs

18  can respond to that memorandum.

19         How does that sound?

20         **MR. BERENSON:**  That sounds all right, your Honor.  If

21  the plaintiff's representations in the case management

22  statement remain their intentions, I think it's fairly clear

23  that they are going to respond to the government's motion by

24  saying that for somewhere between one and four or five reasons,

25  the FISA Amendments Act, Title II of it, which is the Carrier

1    Immunity Title, is unconstitutional.

2          So I would expect that we will come before the Court

3    and seek leave to make a filing of our own.  We will ask you

4    for a number of pages commensurate with the number of pages

5    that the plaintiffs have devoted to attacking the

6    constitutionality of the statute and can file on that schedule

7    and, certainly, have no objection to the plaintiffs responding

8    to our arguments.

9          **THE COURT:**  Can I count on one brief from all of the

10   telecommunications carriers?

11         **MR. BERENSON:**  That you can, your Honor.

12         **THE COURT:**  Fine.  All right.

13         Miss Cohn has some concern or issue about the

14   schedule.

15         **MR. COPPOLINO:**  Well, let me just make a point about

16   that.  This may tie in to what Miss Cohn might have to say.

17         We can do it sooner.  I mean, I don't think I have

18   ever said that to a Court.  I can go sooner than September

19   30th.  If you want to get the process started sooner, there is

20   no particular reason we would have to take until

21   September 30th.  We are quite close to being ready to go.

22         So if your Honor was interested in having our motion

23   in sooner and getting started with that, we could advance this.

24   Otherwise, if not, we could go to with this schedule.

25         So as I understood it, your Honor, it would be our

1  motion, plaintiff's opposition, our reply and hearing.  Just

2  the standard four track.  Page limits, local rules.

3          And, as I say, if you want us to file sooner than the

4  30th, I think we can -- if it's okay with you, we could do

5  that, but you could also adjust the schedule.

6          **THE COURT:**  Well, in light of the conversation that I

7  just had with Mr. Berenson, perhaps it makes sense to proceed

8  in that fashion, to accelerate the government's filing by some

9  number of days.

10          Let's see.  Today is the 12th.  When do you think you

11  could get your motion on file?

12          **MR. COPPOLINO:**  I think I could get it on file within

13  a week, if not sooner.  But a week, the 19th, would be

14  acceptable to us.

15          **THE COURT:**  All right, the 19th.

16          And then, Ms. Cohn, if we follow that schedule, when

17  could you reasonably anticipate being able to file an

18  opposition?

19          **MS. COHN:**  Well, your Honor, I think -- my problem is

20  not that one.  It's what happens once the U.S. and the carriers

21  come in.

22          **THE COURT:**  Well, let's take it one step at a time

23  and maybe we can work these out.  Why don't you answer that

24  question that I just posed, and then we will see how that

25  affects the other problems you have in mind?

1          **MS. COHN:**  If our first response is due on

2   October 23rd and they are going to file their motion by

3   September 19th, I think that's probably sufficient time.

4          **MR. COPPOLINO:**  I think the whole schedule should

5   move up, your Honor, because we don't want to lose time in

6   responding to theirs.

7          Theirs is going to be the first brief we have seen

8   with all their opposition arguments.  So I would hope that we

9   would have, you know, some adequate time to address them.

10          This schedule gives us 7, 13 -- 20 days.  So my idea

11   was to move the schedule up, have a sooner hearing.

12          **THE COURT:**  All right.  September 19th for the

13   government's motion.  How is October 16th for the plaintiff's

14   opposition?

15          **MS. COHN:**  I think that's still doable.  I guess the

16   question I have for you is, is that when we file our cross

17   motion?

18          **THE COURT:**  Your cross motion?

19          **MS. COHN:**  Well, we had envisioned this as a cross

20   motion for declaring the statute unconstitutional.

21          **THE COURT:**  But isn't that really an opposition

22   argument?

23          **MS. COHN:**  It could be framed either way, I think.

24          **THE COURT:**  Okay.  Let's --

25          **MS. COHN:**  As long as there is sufficient pages, I

1   don't care whether I file one brief or two.  The constitutional

2   arguments are not short.

3          **THE COURT:**  Just remember, I can always ask for more

4   pages.

5          **MS. COHN:**  I understand, your Honor, but,

6   unfortunately, Congress has made this statute problematic in

7   not just one way, but a number of ways and we do want to have

8   sufficient space to be able to address them in a reasonable

9   manner.

10         And that leads me to my other concern about this

11  briefing schedule, which is, if I understand what Mr. Berenson

12  is suggesting, he is suggesting that in the period that is a

13  reply, not only does the government do a reply brief -- and in

14  this particular instance, remember, their proposal is 50 pages

15  for the government and 50 page for them.

16         **THE COURT:**  Well, we haven't -- I haven't agreed to

17  that.

18         **MS. COHN:**  And their proposal for what they are

19  calling the sur reply -- and if we are going to do it that way,

20  I guess that's the right way.  You could think of it that way.

21  We thought of it as a reply brief on our cross motion.  I think

22  it's a certain level, six of one, half dozen of another.

23         You know, depending on the size of the briefing that

24  we are going to have to respond to starting on November 13th,

25  we are going to need -- we are going to need, you know, more

1  time and I think that's going to push the hearing date out as

2  well.  Because, you know, their proposal -- and, again, I don't

3  know if they are going to still stick with it -- is that they

4  file 100 pages and then two weeks later we get 30 pages to

5  respond to their 100 pages and that -- that --

6          **THE COURT:**  Forget about these pages.  Forget about

7  the pages.

8          **MS. COHN:**  Okay.

9          **THE COURT:**  Nobody is going to get the kind of pages

10  you are talking about.

11          **MS. COHN:**  Okay.  Then, you know, again, you

12  understand these things are depending on the size of the

13  briefing we have to respond to, the timing that we are going to

14  need to do it --

15          **THE COURT:**  Hold your horses.  Hold your horses.  Try

16  this schedule on for size.

17          **MS. COHN:**  Okay.

18          **THE COURT:**  Government files its motion on

19  September 19th.  Plaintiffs' opposition, October 16th.  The

20  government's reply and any telecommunications carrier response

21  to the plaintiffs' opposition on November 5th.  And then the

22  plaintiffs' response to the telecommunication carriers

23  arguments, November 20.  And a hearing December 2nd.

24          **MS. COHN:**  Your Honor, I just want to make sure that

25  I'm following a couple things that I'm clarifying; that you are

1  taking the position that plaintiffs are not entitled to

2  discovery at this particular point?

3         **THE COURT:**  That's correct.

4         **MS. COHN:**  Is there a decision about whether we are

5  entitled to rely on the other evidence in the record in this

6  case, the Klein evidence and the Marcus evidence, or is that --

7         **THE COURT:**  It's in the record.  It seems to me you

8  can rely upon it.

9         **MS. COHN:**  Okay.  And we won't be filing a

10  consolidated complaint for AT&T plaintiffs?

11         **THE COURT:**  No.  I don't think that's necessary, any

12  more than I think it's necessary to wait for the mandate from

13  the Court of Appeals.  I think that's just a ministerial

14  matter.

15         **MR. COPPOLINO:**  I'm sorry, your Honor.  Miss Cohn is

16  going to file the Klein material in her opposition?  Is that

17  what was just --

18         **MS. COHN:**  Well, it's in the record, so I was

19  assuming I would reference it rather than file it, but I

20  certainly want to have it included as part of what the Court

21  considers here.

22         **MR. COPPOLINO:**  So I think we are set on the

23  schedule, your Honor, and I think --

24         **THE COURT:**  All right.  Page limitations.

25  Government's motion will not exceed 30 pages.  The plaintiff's

1  opposition will not exceed 30 pages.  The government's reply

2  memorandum will not exceed 15.  Telecommunication carrier

3  brief, if any, will not exceed 30.  And the opposition to the

4  telecommunication carrier's briefing by the plaintiffs will not

5  exceed 20 pages.

6          **MS. COHN:**  Your Honor --

7          **THE COURT:**  All right?

8          **MS. COHN:**  Can I ask one more question?

9          **THE COURT:**  You may.

10          **MS. COHN:**  I hope it's the last one.

11          In the sur reply papers that you have given us 20

12  pages for, I was hoping two things.

13          One is that we could address any issues raised by the

14  government in their reply, as well as issues being raised by

15  the carriers.

16          **THE COURT:**  But that -- that's a sur reply.  Your

17  memorandum on the 20th of November should address the

18  telecommunications carrier's position.

19          If there is need for a sur reply because the

20  government has raised some new issue in its reply that was not

21  raised initially, then you have the ability to ask the Court to

22  file a sur reply, just like in any other case.

23          But a reply memorandum is to address only those

24  matters that are raised in opposition that you didn't have a

25  chance to address in your opening.

1        **MS. COHN:**  Okay.  And then --

2        **THE COURT:**  Or I guess in this case it would be just

3   the opposite.

4        **MS. COHN:**  It would be the opposite, the things that

5   were raised in the opposition.

6        **THE COURT:**  Right.

7        **MS. COHN:**  The other -- I guess the other request I

8   have -- and I understand your Honor is trying not to do pages,

9   but I would like an equal number of pages to respond to the

10  carriers, rather than a lesser number, since it's their first

11  argument.

12       **THE COURT:**  All right.  Fair enough.

13       **MS. COHN:**  Okay.

14       **MR. BERENSON:**  Your Honor, I don't want to spend a

15  lot of time arguing about pages --

16       **THE COURT:**  You want to reply though.

17       **MR. BERENSON:**  I just want to -- no.  I just want to

18  make sure the Court understands that the guts of the briefing,

19  the main issues we'll all be arguing about will really be

20  kicked off by the plaintiff's filing on October the 16th.

21       So the oppositions that come in from the government

22  and from the carriers on November the 15th will essentially be

23  in the nature of an opposition.  They will be responding to

24  arguments the plaintiffs have made against application of the

25  statute.

```
 1          So that the filing on the 20th by the plaintiffs is
 2   basically a reply brief, and it would be quite unorthodox for a
 3   reply brief to have -- they will, in effect, have double the
 4   number of pages that we will have to address the guts of the
 5   issues that are before the Court if they have 30 on reply.
 6   That's my only point.
 7          MR. COPPOLINO:  Your Honor, if I could just add.
 8   Again, I really hate to dicker about pages, but as Mr. Berenson
 9   points out, that is our first shot at their arguments.  Could
10   we at least have the 30 pages?
11          And I can tell you right now our first brief is not
12   going to exceed the local page limit, so we don't need 30 on
13   that.  If we could trade off some of that and have 30 for the
14   5th, we would be -- because that's our first shot at all her
15   constitutional arguments, all her arguments on statutory
16   interpretation, the Klein evidence, discovery, due process,
17   everything.  15 pages hardly seems like enough to deal with all
18   of that.
19          MS. COHN:  As long as we are trading, I will take
20   more on opposition in exchange for -- less on response.
21          (Laughter.)
22          THE COURT:  Well, all right, Mr. Coppolino.  You can
23   have 30 pages on the 5th of November.
24          MS. COHN:  Then, your Honor, I would like to have
25   some more pages to present our arguments than just 30.  I said
```

1  that somewhat facetiously, but we were asking for a 60-page

2  brief.

3       There -- so now at this point -- we were asking

4  for a 60-page brief just on the constitutional and statutory

5  interpretation issues.

6       As a result of your order today, we are not only

7  going to have to brief those, but brief the actual application

8  of the statute here, which is an additional thing.  To try to

9  do that in 30 pages, I'm afraid that it's not going to be as

10 helpful to the Court as we would like it to be because we are

11 not going to really be able to address all three things that we

12 need to address here, which is constitutional problems,

13 statutory interpretation problems, and then the application of

14 the statute itself in just 30 pages.

15       It's a new statute.  It's a case of first impression

16 and there is just a lot.

17       **THE COURT:**  I gather Mr. Coppolino is telling me that

18 he can file his motion within the local rules limitation, which

19 I think is 25 pages.

20       **MR. COPPOLINO:**  Right.

21       **MS. COHN:**  That's because it's going to be all under

22 seal.  I want to make sure that those page limits are

23 everything, not just the part that's public.

24       **MR. COPPOLINO:**  No, it's going to be a public

25 submission.  Motion, public memorandum of law, not to exceed 25

1   pages, your Honor.

2          **MS. COHN:**   But the rubber really does meet the road,

3   I think -- I don't often agree with Mr. Berenson, but I think

4   he's right here.

5          The issue isn't the government's initial papers,

6   which I think are fairly straightforward.  The issue is, can

7   the statute be applied at all and if so, how?  Which really

8   doesn't kick in until we get to speak here.  Because the

9   government's argument is going to be straightforward.  They

10  think the statute applies.  They don't think there is any

11  problem and they want our cases dismissed.  That doesn't take

12  very many pages.

13         But to explain why the statute is the problem and,

14  you know, go through the statutory interpretation questions

15  and, obviously, make the argument that there is so much

16  interpretation here that -- the Court to do it, I think 30

17  pages is going to -- it's going to be pretty hard for us to lay

18  all that out in that time frame, in the page frame I guess.

19         **THE COURT:**   All right.  Well, Miss Cohn, I will give

20  you exactly the same number of pages as I'm giving the

21  defendants.  You can have 40 pages for your opposition and 45

22  pages for your filing on the 20th of November.

23         **MS. COHN:**   Thank you, your Honor.

24         **THE COURT:**   25 pages for the government.  30, 30, 85

25  -- 85 pages on both sides.

1              And counsel should not look pained at that.  It's the

2    Court that should look pained at that.

3              All right?  Anything further, counsel?

4              **MR. WHEATON:**  Yes, your Honor.  If I might be heard,

5    if we are concluded?

6              **MS. WHIPPLE:**  Perhaps I should also ask, your Honor?

7    Peggy Whipple on behalf of Missouri Public Service Commission.

8              Could the order clearly include the single Missouri

9    case, which is postured like all the other plaintiff's cases,

10   in which only the telecommunications carriers are the

11   defendants?

12             And I'm the plaintiff's counsel.  It will not affect

13   this briefing schedule at all.  I cooperate fully with these

14   plaintiffs' counsel.  I just want to make sure this case is not

15   forgotten.

16             **MR. COPPOLINO:**  We do object to that, your Honor.  If

17   I could address it?  And I think Mr. Berenson may want to

18   address it as well.

19             Would you like me to --

20             **THE COURT:**  I'm not sure I understand what you are

21   saying.

22             **MR. COPPOLINO:**  Miss Whipple represents the State of

23   Missouri, I believe, and her lawsuit is related to other

24   pending lawsuits that the government has brought against

25   various state governments who have sought to investigate the

1  carriers for alleged intelligence activities.

2         The one difference in -- one of the Missouri cases as

3  to which they are plaintiffs is that they, I believe, have sued

4  to enforce requests for information, and that is the Clayton

5  case.   In the Clayton case they are a plaintiff seeking the

6  information, a state regulatory body seeking the information.

7         The United States has also sued the State of

8  Missouri.   So she represents them as a defendant.   We have also

9  sued several other statutes:   New Jersey, Vermont and a few

10 others, Maine, I think Connecticut is in there, too.   So those

11 cases involving state regulatory actions have not been on the

12 table today.   There is a separate provision of this statute,

13 which by statute preempts those state investigations.

14        Our view has been, and we have talked with state

15 counsel, including Miss Whipple, that we would separate that

16 issue out for a separate motion track because it concerns

17 separate issues.   It concerns whether the Congress can preempt

18 state governments from investigating federal intelligence

19 activities.   So they are not part of this schedule.

20        Now --

21        **THE COURT:**   And that's the point you were trying to

22 make, Miss Whipple?

23        **MS. WHIPPLE:**   That is the point I was trying to make.

24        In the Clayton case as it's currently postured, I

25 represent the plaintiff and the only defendants are six

1   Missouri AT&T telecommunications carriers.

2          Currently this case is more descriptive of the other

3   plaintiff's cases, and we would -- Mr. Coppolino and I have

4   talked, and the one thing that I think we don't disagree on is

5   that there is a fair argument to be raised in this one case

6   only.  If it -- if it is appropriately put into either

7   category, it could be argued that it belongs in 802 and not

8   with the other cases that would fall under 803 in which the

9   government is the plaintiff and we are the defendants.

10          The government is not yet a party in the Clayton

11   case, has had more than two and a half years to intervene, has

12   never chosen to.

13          And so my request to the Court is to allow this case,

14   which currently fits into the 802 category, to actually remain

15   there.  I don't envision any additional briefing or any changes

16   in the schedule.  I will cooperate fully with all these

17   plaintiff's counsel.  Then whatever this Court rules as to the

18   constitutionality and/or applicability of 802 will necessarily

19   become the law of the case for the Clayton case as well.

20          Frankly, if the Clayton case is resolved here -- this

21   is the consistent position I have taken before this Court --

22   the other Missouri case becomes at least moot.  It will never

23   need to be reached.

24          **MR. COPPOLINO:**  Your Honor, the problem is -- and

25   this was not teed up in the case management report because all

1  of the other states agreed to take those cases out of this case

2  management proceeding.

3          And the Clayton case, like all the other state cases,

4  are affected by a different provision of the statute; not the

5  would be that has to do with alleged assistance by telecom

6  carriers through the government, but one that specifically

7  preempts states from investigating the carriers.  State

8  governmental authority.  It's a completely different issue

9  requiring a completely different set of motions and briefs.

10          So if you throw Clayton into the mix, whatever

11  argument could be made that 802 applies, 803 certainly applies

12  and we would have to present that.

13          Now, we could kick that off and start a briefing

14  schedule on that, but none of the other state carrier counsel

15  are here to discuss case management proceedings on that.  And,

16  you know, if we have to file a motion to deal with all of the

17  state cases, including Clayton, then that would have to be

18  added to the mix.

19          And my point simply was that we hadn't presented that

20  to the Court for any case management resolution.

21          **THE COURT:**  It's certainly a new issue, Miss Whipple.

22          **MS. WHIPPLE:**  Your Honor, my position would be that

23  the other cases are not at all affected by this.  They are so

24  procedurally different from the Clayton case that whatever it

25  is we do here will become the law of the case for Clayton under

1   802.

2            **THE COURT:**  Well, then, what do we have to discuss?

3            **MS. WHIPPLE:**  Well, my worry, your Honor, is that if

4   the Clayton case is not specifically included in this case

5   management order, that when all the government cases are teed

6   up for this Court's consideration and I attempt to argue to the

7   Court that 802 and its processes should be applied to Clayton

8   and not 803, I expect to be met with the argument that I lost

9   my opportunity to present Clayton to the Court under 802 and

10   that those arguments are, therefore, somehow waived.

11            You see, the government cannot today assert 803

12   against the Clayton case.  803 requires the government to

13   initiate suit for enforcement.  The government is not a party

14   in this case, not yet.

15            And it, by its own choice, has chosen not to be a

16   party; just as, by their own choices, the other state counsel

17   who had notice of this hearing have chosen not to come.

18            I come today only with my plaintiff's hat on and only

19   in the Clayton case, which I believe if it belongs anywhere,

20   belongs in this case management order with the other similarly

21   situated cases.

22            **THE COURT:**  I'm going to --

23            **MR. BERENSON:**  Your Honor, let me see if I can

24   simplify this.  I will try.

25            The government's and the carriers' essential position

1  is that Clayton is a government case.  It's not a private case

2  against the carriers.

3          There are two different provisions under Title II

4  that might result in dismissal.

5          One is Section 802, which is the Attorney General

6  certification we have been discussing.

7          The other, Section 803, which is a very clear express

8  preemption provision which basically displaces state authority

9  to investigate, sanction or sue carriers for alleged assistance

10  to the intelligence community.

11          All we are saying is that all of the state cases,

12  including the one out of the six in which the state is

13  plaintiff rather than defendant, raise the common legal issues

14  under 803 and ought to be considered together.

15          That doesn't mean 802 might not also apply to

16  Clayton.  It might.  But if all of the state cases are dealt

17  with together, 802 and 803 can be considered in that context.

18          **THE COURT:**  Why isn't the sensible thing to do is to

19  proceed with the issues that we have discussed this morning and

20  then decide whether any of that has any import as far as the

21  Clayton case is concerned?

22          **MS. WHIPPLE:**  Your Honor, I just heard Mr. Berenson

23  say, I believe, that he would not attempt to preclude me from

24  arguing the applicability of 802 at some later time.  And I am

25  very relieved to hear that and think that, perhaps, we may have

1    just resolved this with the Court.

2            THE COURT:  If you are relieved, I'm relieved.

3            MR. BERENSON:  I can't speak for the government, but

4    we certainly will not attempt to preclude Miss Whipple from

5    making those arguments because 802 is just a second way for

6    Missouri to lose.

7            MR. COPPOLINO:  That's right.  And you have to look

8    at it in terms of when we seek to -- we sued the State of

9    Missouri, so the idea that we haven't intervened and somehow --

10   we filed a lawsuit, which is a great form of intervention.

11           And so when we -- then the next step would be for the

12   government, as plaintiff in these state cases, to seek summary

13   judgment based on the preemption provision and at that point

14   these issues regarding whether Section 802 applies, as well as

15   Section 803, would be on the table.

16           If Section 802 applies, the Attorney General

17   certifications as to any alleged carrier assistance by AT&T,

18   the certification would have been lodged connection with the

19   carrier cases.

20           But the question the Court is going to have first is,

21   are they preempted by Section 803, which statutorily does

22   preempt them.  And that's the grounds on which we seek summary

23   judgment.

24           So let's just do them separately.  That's my only

25   point, your Honor.

1              **THE COURT:**  All right.  Mr. Berenson and Miss Whipple

2     appear to be satisfied with the record as it presently stands,

3     so I'm not going to interfere with that.

4              **MS. WHIPPLE:**  Thank you.

5              **MR. BERENSON:**  Thank you, your Honor.

6              **THE COURT:**  All right.

7              **MR. WHEATON:**  Your Honor, on behalf of the media

8     alliance and its members, I was asked this morning to appear

9     and if materials are filed under seal under section --

10    Subsection (c), that we would intervene to seek an order such

11    that those materials, if they are sealed, will be sealed

12    pursuant to court orders, not pursuant to a declaration from

13    the Attorney General.

14             Under the statute if the Attorney General files a

15    declaration that the materials would harm national security,

16    then all of the materials submitted to the Court are reviewed

17    in camera.  They are automatically sealed without further

18    review by the Court.

19             And, furthermore, the Court's own order dismissing

20    the action has to be sealed and cannot disclose the basis.

21             So we would seek to challenge those, if the Attorney

22    General takes advantage of Subsection (c) and files that

23    declaration.

24             **THE COURT:**  All right.

25             **MR. WHEATON:**  Having heard this morning, I think --

1  so we don't slow things down, we will wait the filing from the

2  Attorney General's Office and if things are under seal, then we

3  will seek leave to intervene at that point and just use the

4  normal procedures and page limits and all the rest of it.

5          **THE COURT:**  That's fine.

6          **MR. COPPOLINO:**  If Mr. Wheaton is going to move to

7  intervene, we would then oppose.  Thank you.

8          **MR. WHEATON:**  The only question I would have, should

9  we set a -- if we do that, should we set a hearing date --

10         **MR. COPPOLINO:**  Why don't we do it on the same

11 schedule?

12         **THE COURT:**  Well, let's wait.  You can confer with

13 Mr. Coppolino.

14         **MR. WHEATON:**  I will do that.

15         **THE COURT:**  Obviously, you know what this schedule is

16 and you would have to fold your briefing into this schedule.

17         **MR. WHEATON:**  We'll do that.  Again, we are springing

18 this on people today, so we will meet-and-confer.  Thank you,

19 your Honor.

20         **THE COURT:**  Very well.  Thank you, counsel.

21         **MR. KESTER:**  Your Honor?

22         **THE COURT:**  Mr. Kester?

23         **MR. KESTER:**  I'm sorry, your Honor.  15 seconds for

24 one housekeeping matter, I think is the phrase that's used.

25         I assume I'm correct in thinking that all other

1   activities are stayed pending the Court's decision?

2            **THE COURT:**  That's correct.

3            **MR. KESTER:**   Thank you, your Honor.

4            **THE COURT:**  Very well.  Thank you, counsel.  We look

5   forward to seeing you in a couple of months.

6            (Whereupon, further proceedings in the

7              above matter were adjourned.)

8

9                              --oo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

     I, DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in MDL 06-1791 VRW, IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

     The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


              /s/ Debra L. Pas

        Debra L. Pas, CSR 11916, CRR, RMR, RPR

         Wednesday, November 5, 2008