IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAROLYN JEWEL, TASH HEPTING, GREGORY HICKS, ERIK KNUTZEN AND JOICE WALTON, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

    Plaintiffs,

v

NATIONAL SECURITY AGENCY ET AL,

    Defendants.

No C 08-cv-4373 VRW

---

IN RE:

NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION

THIS DOCUMENT RELATES TO:

VIRGINIA SHUBERT, NOHA ARAFA, SARAH DRANOFF AND HILARY BOTEIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

    Plaintiffs,

v

BARACK H OBAMA ET AL,

    Defendants.

MDL Docket No C 06-1791 VRW

Member case No C 07-0693 VRW

ORDER

These two actions are among those filed in response to revelations in the press, beginning in December 2005, that the National Security Agency (NSA), an agency of the United States government, had carried out one or more programs involving warrantless electronic surveillance of telephone and e-mail telecommunications into and out of the United States.

The various United States government defendants in these cases (collectively, "the United States") have moved to dismiss and/or seeks summary judgment as to all claims in both cases, summarizing their arguments in nearly identical fashion thusly: "the Court lacks subject matter jurisdiction with respect to plaintiffs' statutory claims against the United States because Congress has not waived sovereign immunity, and summary judgment for the Government on all of plaintiffs' remaining claims against all parties (including any claims not dismissed for lack of jurisdiction) is required because information necessary to litigate plaintiffs' claims is properly subject to and excluded from use in the case by the state secrets privilege and related statutory privileges." Jewel, C 08-4373 Doc #18 at 2; see also Shubert, C 07-0693 Doc #680/38[1] at 2.

For the reasons stated herein, the court has determined that neither group of plaintiffs/purported class representatives has alleged an injury that is sufficiently particular to those plaintiffs or to a distinct group to which those plaintiffs belong; rather, the harm alleged is a generalized grievance shared in

---

[1] Citations to documents in the Shubert docket will be in the following format: Doc #xxx/yy, with the first number corresponding to the MDL docket (M:06-1791) and the second corresponding to the individual docket (C:07-0693).

2

substantially equal measure by all or a large class of citizens. "[I]njuries that are shared <u>and</u> generalized —— such as the right to have the government act in accordance with the law —— are not sufficient to support standing." <u>Seegers v Gonzales</u>, 396 F3d 1248, 1253 (DC Cir 2005).

Accordingly, these actions must be, and hereby are, DISMISSED with prejudice. The various other grounds advanced by the Unites States are not ruled on herein and form no part of the basis for this order. Judgment shall be entered against plaintiffs in both actions.

**I**

**A**

In December 2005, news agencies began reporting that President George W Bush had ordered the NSA to conduct, without warrants, eavesdropping of some portion of telecommunications in the United States and that the NSA had obtained the cooperation of telecommunications companies to tap into a significant portion of the companies' telephone and e-mail traffic, both domestic and international. See, e g, James Risen and Eric Lichtblau, <u>Bush Lets US Spy on Callers Without Courts</u>, NY Times (Dec 16, 2005). A copy of this article is attached.

In January 2006, the first of dozens of lawsuits by customers of telecommunications companies were filed alleging various causes of action related to such cooperation with the NSA in warrantless wiretapping of customers' communications. One such lawsuit was <u>Hepting v AT&T Corp</u>, C 06-0672 VRW (ND Cal filed January 31, 2006). The four plaintiffs in that suit were Tash

3

Hepting, Gregory Hicks, Erik Knutzen and Carolyn Jewel. In addition to the dozens of cases filed against telecommunications companies, several were filed against United States government entities by individuals claiming to have been surveilled. In six states, officials with oversight authority over public utilities initiated administrative proceedings to investigate telecommunications companies' alleged assistance to the NSA.

Several of the cases arising from the NSA's alleged warrantless electronic surveillance were originally venued in the Northern District of California; others were filed in federal district courts throughout the United States. The instant case brought by plaintiff Virginia Shubert and her co-plaintiffs against George W Bush and other government officials was filed May 17, 2006 in the Eastern District of New York.

In 2006, the United States filed lawsuits seeking to enjoin state officials in Maine, New Jersey, Connecticut, Vermont and Missouri from pursuing their investigations into the alleged disclosure of customer telephone records by various telecommunication carriers to the NSA. These motions were based, in general, on the Supremacy Clause of the United States Constitution, the foreign affairs power of the federal government and the state secrets privilege (SSP).

In the Hepting case and the other cases in which individual plaintiffs sought to sue telecommunications companies, the United States moved to intervene and simultaneously to dismiss, asserting the SSP and arguing, in essence, that the SSP required immediate dismissal because no further progress in the litigation was possible without compromising national security. C 06-0672 VRW

4

Doc ##122-125.  The telecommunications company defendants in the case also moved to dismiss on other grounds.  C 06-0672 VRW Doc #86.

On July 20, 2006 the court denied the motions to dismiss, holding that:  the SSP did not categorically bar plaintiffs' action; the subject matter of the action was not a state secret; the SSP would not prevent the telecommunications company defendants from disclosing whether they had received certifications authorizing the alleged assistance to the government; statutory privileges did not bar the action; plaintiff customers had sufficiently alleged injury-in-fact to establish standing; and neither a purported common law immunity nor the doctrine of qualified immunity prevented plaintiffs from proceeding against the telecommunications company defendants.  The court certified its order for an interlocutory appeal pursuant to 28 USC § 1292(b), but denied the United States' request for a stay of proceedings pending appeal.  Hepting v AT&T Corp, 439 F Supp 2d 974 (ND Cal 2006).

On August 9, 2006, the Judicial Panel on Multidistrict Litigation ordered all cases arising from the alleged warrantless wiretapping program by the NSA transferred to the Northern District of California and consolidated before the undersigned judge.

On July 24, 2007, the court denied the United States' motion for summary judgment in its actions to enjoin the state officials' investigations.  The court determined that the states' investigations into wiretapping activities did not violate the doctrine of intergovernmental immunity, were not preempted by federal statutes and did not infringe on the federal government's power over foreign affairs to a constitutionally impermissible

degree. M 06-1791 Doc #334; 2007 WL 2127345. Because the <u>Hepting</u> appeal was then pending, the court refrained from considering the government's assertion of the SSP.

On August 30, 2007, the court heard a number of motions including the United States' motion to dismiss the <u>Shubert</u> case (Doc #295/yy). Doc #368.

On March 14, 2008, the Ninth Circuit entered an order withdrawing the submission in the <u>Hepting</u> case. CA Docket No 06-17132, Doc #109. In light of that order, this court terminated the pending motion to dismiss in <u>Shubert</u> shortly afterward giving the United States leave to petition the court to re-open the motion at the next case management conference in the matter should the circumstances so warrant. Doc #438.

On July 10, 2008, Congress amended the Foreign Intelligence Surveillance Act of 1978 ("FISA"), 50 USC §§1801-71, by enacting the FISA Amendments Act of 2008, Pub L No 110-261, 122 Stat 2436 (FISAAA), codified at 50 USC §1885a. Of special relevance to these cases, the new law included a provision for the benefit of telecommunications companies that allowed the United States to invoke a newly-created immunity and thus seek dismissal of cases brought against telecommunications companies by certifying that certain narrowly-defined circumstances were present, including, as relevant to this litigation, that the defendant had "provided assistance to an element of the intelligence community * * * in connection with an intelligence activity involving communications that was —— (I) authorized by the President during the period beginning on September 11, 2001, and ending on January 17, 2007; and (ii) designed to detect or prevent a terrorist

attack, or activities in preparation for a terrorist attack, against the United States." FISAAA also contained a provision (section 803) depriving states of authority to: investigate; require through regulation or any other means the disclosure of information about; impose any administrative sanction for; or commence or maintain a civil action pertaining to "alleged assistance to an element of the intelligence community" into an electronic communication service provider. 50 USC §1885b.

On August 28, 2008, the Ninth Circuit remanded Hepting v AT&T without rendering a decision "in light of the FISA Amendments Act of 2008." CA Docket No 06-17137 (9th Cir) Doc #116.

On September 18, 2008, plaintiffs Carolyn Jewel, Tash Hepting, Gregory Hicks, Erik Knutzen and Joice Walton —— all, with the exception of Walton, named plaintiffs in the Hepting action —— filed the instant lawsuit against the NSA and various government officials. Pursuant to Rule of Procedure of the Judicial Panel on Multidistrict Litigation 7.5(a), Jewel was reassigned to the undersigned judge but not added to the MDL docket.

On September 19, 2008, the United States filed its motion to dismiss all claims against telecommunications company defendants in these cases, including the pending master consolidated complaints based on section 802 of FISAAA. Doc #469. On December 23, 2008, the United States moved for summary judgment in the "state cases" relying on section 803 of FISAAA. Doc #536. On June 3, 2009, the court granted both motions, finding the provisions of FISAAA at issue on the motions constitutional and therefore enforceable by the United States in the manner prescribed by statute. Doc ##639, 640.

7

The June 3 orders left only five MDL cases — those brought by private individuals and entities and naming United States government officials and agencies as defendants (<u>Al-Haramain Islamic Foundation, Inc et al v Bush et al</u>, No C 07-0109; <u>Center for Constitutional Rights et al v Bush e al</u>, No C 07-1115; <u>Guzzi v Bush</u>, No C 06-6225; <u>Shubert et al v Bush et al</u>, No C 07-0693) and one "tagalong action" transferred by order of the MDL Panel after the United States' motions were filed (<u>McMurray et al v Verizon Communications Inc et al</u>, C 09-0131) — and <u>Jewel v NSA</u>. The motions by the United States and the telecommunications company defendants to dismiss the <u>McMurray</u> case were argued on June 3 and, after reviewing supplemental briefs, the court dismissed <u>McMurray</u>. Doc #661.

This concludes the general procedural history; a discussion of the specific motions that are the subjects of this order now follows.

B

<u>Jewel v NSA</u>. In <u>Jewel</u>, meanwhile, the United States "government defendants" in their official capacities filed the instant motion (on April 3, 2009) asking the court to "dismiss plaintiffs' statutory claims for lack of jurisdiction, uphold the Government's privilege assertions, enter summary judgment for the Government Defendants, and dismiss the case as to all defendants and all claims." C 08-4373 Doc #18 at 35. Plaintiffs filed an opposition (Doc #29), and defendants replied (Doc #31).

Those defendants sued in their individual capacities — George W Bush, Richard B Cheney, David S Addington, Keith B

8

Alexander, Michael V Hayden, John D McConnell, John D Negroponte, Michael B Mukasey, Alberto R Gonzales, and John D Ashcroft (see Doc #14) –– (some of whom had become private citizens in the intervening months) sought to avoid responding to the complaint pending the outcome of the dispositive motion and moved the court for an order relieving them of the responsibility to respond (Doc #32), a step which prompted plaintiffs to file a counter-motion for "relief from improper motion for reconsideration by individual capacity defendants." Doc #33. The court heard arguments on the dispositive motion on July 15, 2009, after which plaintiffs requested –– and obtained –– leave to file a supplemental brief on the scope of FISA preemption of the SSP (Doc ##38, 40); the United States responded with its own supplemental brief on September 4, 2009. Doc #46. On September 17, 2009, the court held a hearing on the individual capacity defendants' request to defer responding to the complaint and the plaintiffs' counter-motion. Doc #47.

The fifty-five-page complaint contains seventeen causes of action. It alleges that plaintiffs are, variously, "an individual residing in Livermore, California [who] has been a subscriber and user of AT&T's residential long distance telephone service since February 1995; an individual residing in San Jose, California [who] has been a subscriber and user of AT&T's residential long distance telephone service since February 1995; an individual residing in Petaluma, California [who] has been a subscriber and user of AT&T's WorldNet dial-up internet service since approximately June 2000; an individual residing in Los Angeles, California [who] has been a subscriber and user of AT&T's

9

WorldNet dial-up internet service from at least October 2003 until May 2005; and an individual residing in San Jose, California [who] is a current subscriber and user of AT&T's WorldNet dial-up internet service. Doc #1 at 5, ¶¶20-24.

The complaint alleges a factual narrative beginning with President George W Bush's approval of, and the NSA's and various government officials' implementation of, surveillance activities inside the United States without statutory authorization or court approval, including electronic surveillance of Americans' telephone and internet communications (id ¶¶39-49); these allegations have in some form appeared in a number of books and thousands of print and broadcast media stories and blog posts and, accordingly, can now fairly be characterized as common knowledge to most Americans. The Jewel complaint also contains allegations about AT&T's involvement in the surveillance activities that are quite similar to those set forth in the complaint in Hepting and discussed in the court's opinion in that case, to wit, that AT&T and the NSA maintained special rooms at a Folsom Street facility in San Francisco for purposes of carrying out surveillance of AT&T's communications networks. ¶¶50-81. 439 F Supp 2d at 989-90. Plaintiffs also allege that since October 2001, defendants have "continually solicited and obtained the disclosure" of all information in AT&T's major databases of stored telephone and Internet records and that these records include the records of plaintiffs' phone and/or internet use. ¶¶82-97. The complaint contains no other allegations specifically linking any of the plaintiffs to the alleged surveillance activities.

\\

The complaint purports to set forth seventeen causes of action against the United States and defendant government officials in their official and individual capacities, claiming that the alleged actions violate the First and Fourth Amendments of the United States Constitution and the separation of powers doctrine, as well as various statutory provisions — section 109 of FISA, 50 USC §1809; the Wiretap Act, as amended by the Electronic Communications Privacy Act, 18 USC §2511(1)(a), (1)(c), (1)(d) and(3)(a); and the Stored Communications Act, 18 USC §2703(a), (b) and (c). Because the defendants are sued in both their official and individual capacities, the originally-named defendants remain in the suit in their individual capacities only, while new holders of their offices are substituted in as defendants for official-capacity purposes pursuant to FRCP 25(d).[2]

Plaintiffs seek declaratory, injunctive and other equitable relief, including: a declaration that the surveillance program as alleged violates plaintiffs' rights under the First and Fourth Amendments, 18 USC §2511, 18 USC §2703, 50 USC §1809, the Administrative Procedure Act and the constitutional separation-of-powers principle; an injunction prohibiting defendants' continued use of the program and requiring the defendants to turn over an inventory of their pertinent stored communications and records; statutory, actual and punitive damages to the extent permitted by law and according to proof; and attorney fees. Doc #1 at 53.

---

[2] Rule 25(d) provides: "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."

B

Shubert v Bush. The parties held a telephonic status conference on September 3, 2009 in which the United States announced its intention to renew its motion to dismiss. The court offered the parties the opportunity to supplement their earlier submissions on the motion and set a briefing schedule. After a series of stipulated continuances assertedly due to a Department of Justice re-evaluation of the circumstances in which the United States would invoke the SSP in litigation (Doc ##674, 679), the United States filed its motion on October 30. The matter was fully briefed and the court heard arguments and took the matter under submission on December 15, 2009.

The Shubert complaint, which has never been amended, alleges that each of the plaintiffs resides and works in Brooklyn, New York and, variously: "frequently calls and sends emails to the United Kingdom, France and Italy and has made similar communications as part of her work"; "frequently calls and sends emails to family and friends in Egypt from her home, and has made telephone calls as a part of her work"; "regularly makes phone calls and sends email both within the United States [and] calls the Netherlands and sends emails to the Netherlands and Norway from her home"; "makes phone calls and sends email both within the United States, and outside the United States." As to each plaintiff, the complaint alleges "a good faith basis to believe that she, like so many millions of Americans, has been surveilled without a warrant pursuant to the illegal Spying Program." Doc #1 at 3, ¶¶ 5-8. Defendants named in the complaint are current and former government officials George W Bush, Michael V Hayden, Keith B Alexander,

12

Alberto Gonzales, John Ashcroft and Does 1-100.  The current holders of the various offices held by the originally-named defendants have been substituted pursuant to FRCP 25(d).

Plaintiffs' factual allegations rely on the above-referenced December 2005 New York Times article, on public statements by the President and on other publicly available information (Complaint ¶ 46-92).  The complaint contains no factual allegations specifically linking any of the plaintiffs to the alleged surveillance activities; it contains only the allegations of domestic and international telephone and electronic mail use.  The complaint alleges only interception of plaintiffs' communications, but not, as in the other cases in this MDL and in Jewel, collection and storage of records of monitored communications.

The complaint purports to set forth causes of action under: FISA's section 1810 asserting that they, as "aggrieved persons]" are entitled to damages under 50 USC § 1810; the ECPA; the SCA; and the Fourth Amendment.  Plaintiffs seek certification of their suit as a class action; a declaratory judgment on all claims; an award of liquidated and/or compensatory damages; an award of punitive damages; and attorney fees and costs.

II

Upon careful consideration of the allegations of both complaints, the court has concluded that neither the Jewel plaintiffs nor the Shubert plaintiffs have alleged facts sufficient to establish their standing to proceed with their lawsuit against
\\

13

the President, the NSA and the other high-level government officials named as defendants in these lawsuits.

Although most of the plaintiffs and nearly all of the relevant factual allegations are the same as in Hepting, the standing problem presented in these cases is markedly different. In Hepting, the court rejected the AT&T defendants' arguments for dismissal based on lack of standing, noting that plaintiffs' status as customers of AT&T who used its telecommunications services was sufficient to withstand the motion to dismiss for lack of standing:

> AT & T also contends ''[p]laintiffs lack standing to assert their statutory claims (Counts II-VII) because the FAC alleges no facts suggesting that their statutory rights have been violated'' and ''the FAC alleges nothing to suggest that the named plaintiffs were themselves subject to surveillance.'' * * * But AT & T ignores that the gravamen of plaintiffs' complaint is that AT & T has created a dragnet that collects the content and records of its customers' communications. See, e g, FAC, ¶¶ 42-64. The court cannot see how any one plaintiff will have failed to demonstrate injury-in-fact if that plaintiff effectively demonstrates that all class members have so suffered. * * * As long as the named plaintiffs were, as they allege, AT & T customers during the relevant time period (FAC, ¶¶ 13-16), the alleged dragnet would have imparted a concrete injury on each of them.

439 F Supp 2d at 1000. Citing FEC v Akins, 524 US 11 (1998), the court also rejected AT&T's contention that the diffuse nature of the harm from the alleged dragnet deprived individual AT&T customers of standing:

> This conclusion is not altered simply because the alleged injury is widely shared among AT & T customers.
>
> * * *
>
> Here, the alleged injury is concrete even though it is widely shared. Despite AT&T's alleged creation of a dragnet to intercept all or substantially all of its

14

> customers' communications, this dragnet necessarily
> inflicts a concrete injury that affects each customer
> in a distinct way, depending on the content of that
> customer's communications and the time that customer
> spends using AT&T services. Indeed, the present
> situation resembles a scenario in which "large numbers
> of individuals suffer the same common-law injury (say,
> a widespread mass tort."

439 F Supp 2d at 1001.

Whereas the gravamen of the Hepting plaintiffs' complaint was rooted in a contractual relationship between private parties, the Jewel and Shubert cases, boiled to their essence, are both efforts by citizens seeking to redress alleged misfeasance by the executive branch of the United States government.

As the court noted in Hepting, "[w]hether styled as a constitutional or prudential limit on standing, the [Supreme] Court has sometimes determined that where large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance." Id at 1000, quoting FEC v Akins, 524 US 11, 23. This special species of standing problem is directly relevant here.

Stated more generally, "[s]tanding will be denied to one alleging only a generalized interest, shared by a large segment of the public. * * * The courts do not want to be viewed as a panacea of all of society's ills, a task too large and often inappropriate for them to handle. If an injury is far-reaching, it is likely that a better solution would come from a political forum." Charles H Koch, Jr, 33 Federal Practice and Procedure: Judicial Review of Administrative Action § 8413 at 452.

A considerable jurisprudence has developed around United States citizens and taxpayers attempting to challenge government

15

actions or the manner in which Congress or the executive branch manages and spends public funds. By and large, these challenges have failed on standing grounds:

> Because the interests of the taxpayer are, in essence, the interests of the public at large, deciding a constitutional claim based solely on taxpayer standing "would be, not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and co-equal department, an authority which plainly we do not possess."

Hein v Freedom From Religion Foundation, 551 US 587, 601 (2007), quoting Frothingham v Mellon, 262 US 447, 489 (1923).

Cases in which plaintiffs sue the government in order to stop or expose constitutional or other transgressions by government officials present special standing considerations. A citizen may not gain standing by claiming a right to have the government follow the law. Ex parte Levitt, 302 US 633 (1937). The essence of standing is the party's direct, personal stake in the outcome as opposed to the issues the party seeks to have adjudicated in the litigation:

> The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

Flast v Cohen, 392 US 83, 99 (1968), quoting Baker v Carr, 369 US 186, 204 (1962).

The two cases at bar are, in essence, citizen suits seeking to employ judicial remedies to punish and bring to heel high-level government officials for the allegedly illegal and

16

unconstitutional warrantless electronic surveillance program or programs now widely, if incompletely, aired in the public forum. Plaintiffs have attempted to present their complaint as something narrower than a generalized grievance by alleging interference with their telephone and/or broadband internet subscription and/or use. But such allegations do not avoid the problem. Telephone subscribership and internet use are widespread on the scale of the paying of taxes or the holding of United States citizenship: in November 2005, 92.9% of United States households subscribed to telephone service –– 107 million households in all.[3] In December 2005, there were 51,218,145 high-speed internet connections in the United States; one year later, there were 82,809,845; by the end of 2007, there were over 100,000,000.[4] Allegations of telephone use for international calls do not fare much better.

These cases allege both statutory and constitutional violations. This court has written at length in another case in this MDL, <u>Al-Haramain Islamic Foundation, Inc v Bush et al</u>, about the allegations necessary to make out a prima facie case to establish "aggrieved person" status in a lawsuit based on electronic surveillance (see, for example, 50 USC §1801(k)). 564 F Supp 2d 1109(ND Cal 2008); 595 F Supp 2d 1077 (ND Cal 2009). In

---

[3] Alexander Belinfante, Telephone Subscribership In The United States (Data through November 2006), Industry Analysis and Technology Division Wireline Competition Bureau, Federal Communications Commission (May 2007)at 6, Table 1 http://www.fcc.gov/Document_Indexes/WCB/2007_index_WCB_Report.html, DOC-272904A1.pdf (consulted December 29, 2009).

[4] "High-Speed Services for Internet Access: Status as of June 30, 2007," Industry Analysis and Technology Division, Wireline Competition Bureau, Federal Communications Commission (March 2008)at 7, Table 1. Available at http://www.fcc.gov/Document_Indexes/WCB/2008_index_WCB_Report.html, DOC-280906A1.pdf (consulted December 29, 2009).

17

that case, plaintiffs were able to allege in an amended complaint following dismissal of their original complaint "a sequence of events pertaining directly to the government's investigations of Al-Haramain Oregon" and the court denied the government's motion to dismiss the amended complaint. 595 F Supp 2d at 1079. While plaintiffs in <u>Jewel</u> and <u>Shubert</u> assert that they are aggrieved, they neither allege facts nor proffer evidence sufficient to establish a prima facie case that would differentiate them from the mass of telephone and internet users in the United States and thus make their injury "concrete and particularized" consonant with the principles articulated in <u>Lujan v Defenders of Wildlife</u>, 504 US 555, 560 (1992).

As for plaintiffs' constitutional claims, "when a court is asked to undertake constitutional adjudication, the most important and delicate of its responsibilities, the requirement of concrete injury further serves the function of insuring that such adjudication does not take place unnecessarily." <u>Schlesinger v Reservists Committee to Stop the War</u>, 418 US 208, 221 (1974). This is especially true when, as here, the constitutional issues at stake in the litigation seek judicial involvement in the affairs of the executive branch and national security concerns appear to undergird the challenged actions. In such cases, only plaintiffs with strong and persuasive claims to Article III standing may proceed.

### III

Because the court GRANTS the United States' motions to dismiss based on the specific standing grounds stated herein, the

18

court declines to rule on the sovereign immunity, SSP and other issues raised in the United States' motions.

For the reasons stated herein, the government defendants' motion to dismiss in <u>Jewel el al v NSA et al</u>, C 08-4373 Doc #18, is GRANTED. Inasmuch as plaintiffs lack the particularized injury to afford them standing to sue defendants in their official capacities, so also plaintiffs lack standing to pursue claims against defendants as individuals. The substitution of new individuals into certain official positions during the pendency of these actions does not affect this conclusion and hence renders moot the motions at docket numbers 32 and 33 pertaining to the obligation of the defendants sued in their individual capacity to respond to the complaint. The motions at docket numbers 32 and 33 are therefore DENIED. Further, the court's ruling renders moot plaintiffs' substitution of John C Yoo and Jack L Goldsmith for Doe defendants 1 and 2, respectively. Doc #56. Plaintiffs therefore are DENIED leave to amend the complaint.

For the reasons stated herein, the United States' motion to dismiss in <u>Shubert et al v Obama et al</u>, C 07-0693 Doc #38 (MDL Doc #680) is GRANTED.

The clerk is directed to close these two files and to terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge